# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

TIMMY TRUJILLO,

      Plaintiff,

v.                                                      Civ. No. 16-1047 GJF

NANCY A. BERRYHILL, *Acting*
*Commissioner of the Social Security*
*Administration*,

      Defendant.

## ORDER

THIS MATTER is before the Court on Plaintiff Timmy Trujillo's ("Plaintiff's") "Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for a Rehearing, With Supporting Memorandum" ("Motion"), filed on May 15, 2017. ECF No. 20. The Commissioner responded on July 13, 2017. ECF No. 22. Plaintiff filed his Reply on August 1, 2017. ECF No. 23. Having meticulously reviewed the entire record and the parties' briefing, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's") ruling should be **AFFIRMED**. Therefore, and for the further reasons articulated below, the Court will **DENY** Plaintiff's Motion.

## I.    BACKGROUND

Plaintiff was born on May 7, 1965. Administrative R. ("AR") 20. Plaintiff attended high school through the eleventh grade, and also attended art school for eighteen months. AR 20, 37. Plaintiff previously did construction work and worked in a warehouse. AR 80-84, 121. Plaintiff filed an application for Supplemental Security Income ("SSI") on December 10, 2010, alleging a disability onset date of May 1, 2010. AR 112. The Social Security Administration ("the SSA") denied Plaintiff's claim on January 11, 2011, and again upon reconsideration on February 23, 2011. AR 112. Plaintiff then requested a hearing, which was held in front of Administrative

Law Judge ("ALJ") Ben Willner on July 17, 2012. AR 112. Plaintiff testified at the hearing, as did Leslie J. White, a vocational expert ("VE"). AR 112. Plaintiff was represented by counsel. AR 112.

On March 6, 2013, ALJ Willner issued his decision that Plaintiff was not disabled from May 1, 2010, through the date of his decision. AR 122. Plaintiff subsequently asked the SSA's Appeals Council ("AC") to review ALJ Willner's decision, and on August 6, 2014, the AC vacated ALJ Willner's decision and remanded the case to a different ALJ. AR 128-130.

The next ALJ, Michelle K. Lindsay, held a hearing on January 26, 2015, at which Plaintiff testified. AR 11. A different VE, Pamela A. Bowman, also testified. AR 11. Plaintiff was again represented by an attorney during the hearing. AR 11. To comply with the AC's directive that the next ALJ must obtain additional evidence concerning Plaintiff's organic mental impairment, ALJ Lindsay referred Plaintiff for a consultative psychological evaluation, which ALJ Lindsay considered in rendering her decision.[1] AR 11.

On May 19, 2015, ALJ Lindsay found that Plaintiff was not disabled from the date he filed his application[2], December 10, 2010, through the date of her decision. AR 21-22. Plaintiff then requested that the AC review ALJ Lindsay's decision, a request the AC denied on August 25, 2016. AR 1-4. As a consequence, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 422.210(a) (2017). Plaintiff timely filed his appeal in this Court on September 22, 2016. ECF No. 1.

## II.     PLAINTIFF'S CLAIMS

---

[1] The Court does not summarize the remaining remand instructions from the Appeals Council because Plaintiff does not appeal on the basis that they were not followed.
[2] Plaintiff does not discuss the discrepancy between the alleged onset date of disability, May 1, 2010, and the fact that ALJ Lindsay found that Plaintiff was not disabled from December 1, 2010 through the date of her decision. As Plaintiff has not challenged this inconsistency, the Court will not address it further.

Plaintiff argues that the residual functional capacity ("RFC") that ALJ Lindsay determined was based upon an improper weighing of evidence. Pl.'s Mot. 12, ECF No. 20. Specifically, Plaintiff asserts that the ALJ did not properly evaluate the opinions of Dr. Harry Burger, D.O., Dr. John Owen, Ph.D., and Certified Family Nurse Practitioner ("CFNP") Susette Eaves. *Id.* at 12-19. Second, Plaintiff argues that ALJ Lindsay improperly found Plaintiff to be only partially credible. *Id.* at 19-21. Third, Plaintiff contends that ALJ Lindsay did not resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). *Id.* at 22-25. Had the ALJ done so, Plaintiff argues, two of the three jobs identified by the VE would have been eliminated. *Id.*

## III.    APPLICABLE LAW

### A.    Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision becomes the final decision of the agency.[3] The Court's review of that final agency decision is both factual and legal. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). An ALJ's decision "is not based on

---

[3] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981 (2016); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B.     Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity

("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of his past relevant work to determine if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to his or her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is nonetheless capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV. THE ALJ'S DECISION[4]

At step one, ALJ Lindsay determined that Plaintiff had not engaged in substantial gainful activity since December 10, 2010, the application date[5]. AR 13. At step two, she found that Plaintiff had the following severe impairments: moderate left ventricular hypertrophy; history of chronic heart failure and acute kidney failure; chronic kidney disease with normal creatinine levels; hypertension; obesity; obstructive sleep apnea; adjustment disorder with mixed anxiety and depressed mood; and mild neuro-cognitive disorder. AR 13. ALJ Lindsay also considered Plaintiff's allegations of bumps in his fingers, arthritis, and problems gripping with his left hand,

---

[4] In this Order, the Court discusses only the portions of the ALJ's decision that are relevant to the issues raised on appeal.
[5] *See supra* note 1.

5

but concluded that the alleged impairments were not medically determinable, and thus not severe. AR 13.

At step three, ALJ Lindsay determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 13-14.

At step four, ALJ Lindsay determined Plaintiff's RFC as follows:

> I find that [Plaintiff] has the residual functional capacity to perform light work as defined in [20 C.F.R. § 416.967(b)] including the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently; push and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk at least 6 hours during 8 hours; and sit at least 6 hours during 8 hours. He is further limited in that he should never climb ladders, ropes, or scaffolds; must avoid unprotected heights; is limited to understanding, remembering, and carrying out only simple instructions; is able to maintain attention and concentration to perform only simple tasks for two hours at a time without requiring redirection to task; requires work involving no more than occasional change in the routine work setting; can have only occasional contact with the general public; and interaction with co-workers should be incidental to the work performed.

AR 16. To determine Plaintiff's RFC, ALJ Lindsay evaluated Plaintiff's credibility and reviewed medical evidence in the record. AR 16-20. ALJ Lindsay concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff was only partially credible because his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible[.]" AR 17.

ALJ Lindsay also considered opinions from consultative examiner Dr. Burger, consultative psychologist Dr. Owen, CFNP Eaves, and non-examining state agency medical consultants Dr. Janice Kando, M.D., Dr. Allen Gelinas, M.D., and Dr. Lawrence Kuo, M.D. AR 17-20, 393-94, 420-21, 431. In addition, ALJ Lindsay reviewed medical records from First Choice Community Healthcare, University of New Mexico Hospital, Presbyterian Hospital, and

Cardiac Care Consultants of NM, P.C.  AR 16-20.  ALJ Lindsay also reviewed a third party functional report from Plaintiff's sister Suzanne Trujillo-Bergey, Plaintiff's testimony during the hearing, and the VE's testimony during the hearing.  AR 15-20.  Although ALJ Lindsay gave significant weight to Ms. Trujillo-Bergey's statements, she noted that her statements were "not completely consistent with the evidence as a whole."  AR 19.  The issues Plaintiff raises on appeal concern only the opinions of Dr. Burger, Dr. Owen, and CFNP Eaves, and consequently the Court will review only those opinions in detail.

*Dr. Harry Burger, D.O.*

Dr. Burger evaluated Plaintiff on August 28, 2010, as a consultative examiner.  AR 385.  Although the ALJ did not assign a specific weight to Dr. Burger's opinion, the Court infers that the ALJ nonetheless adopted the opinion because she referred to the following in her decision: Dr. Burger's observations regarding Plaintiff's hands and his grip strength [AR 13]; Plaintiff's statements to Dr. Burger that he can dress, wash, and feed himself without assistance [AR 18]; Plaintiff's statements to Dr. Burger that he can stand and sit without difficulty, can walk a mile or two if he had to, can lift thirty-five pounds, and can help around the house with sweeping, vacuuming, cooking, trash, dishes and laundry [AR 19]; and Dr. Burger's findings during his physical examination that Plaintiff was obese, ambulated normally, got on and off the exam table and out of a chair without difficulty, could walk on his heels and toes, and could squat [AR 20]. The only medical record Dr. Burger reviewed was one two-page note from Plaintiff's appointment at Presbyterian Heart Group on June 2, 2009.  AR 385.  Dr. Burger also reviewed Plaintiff's two-year history of hypertension, noting that while Plaintiff had some degree of congestive heart failure, according to the note from Presbyterian Heart Group, his congestive heart failure had improved.  AR 386.

During the physical examination, Dr. Burger noted that Plaintiff's blood pressure was 133/140, and that Plaintiff stated that he had not taken his blood pressure medicines for two days because he had run out of them. AR 387. Dr. Burger observed that Plaintiff was not in acute distress and that he ambulated normally. AR 387. Dr. Burger noted normal range of motion in Plaintiff's elbows, forearms, wrists, shoulders, cervical spine, lumbar spine, hips, knees, and ankles. AR 387. Plaintiff did not show abnormal affect or behavior, and was alert, oriented, cooperative, and polite. AR 388.

Dr. Burger ultimately concluded that, although Plaintiff "was recently found to have some congestive heart failure and hypertension," those conditions were treated, "greatly improved[,] and essentially resolved according to the cardiology report we reviewed." AR 389. Dr. Burger further opined that Plaintiff did not have any admitted or revealed liver problems and "[did] not have real kidney failure; this is associated with his hypertensive disease." AR 389.

*Dr. John Owen, Ph.D.*

ALJ Lindsay assigned limited weight to Dr. Owen's opinion regarding Plaintiff's functional limitations. AR 19. Dr. Owen evaluated Plaintiff on November 6, 2014, as a consultative psychological examiner. AR 480. To evaluate Plaintiff, Dr. Owen interviewed him and administered two standardized tests. AR 480. Plaintiff reported difficulty with thinking after being hit in the head with a baseball bat when he was 16 years old. AR 480. Plaintiff left high school in the eleventh grade and did not obtain his General Equivalency Diploma. AR 480. Dr. Owen concluded that Plaintiff was depressed and anxious, although it is unclear whether Dr. Owen concluded that from his interview with Plaintiff or whether Plaintiff self-reported his depression and anxiety. AR 481.

With respect to activities of daily living, Plaintiff stated that he washed dishes for his sister, tried to do some household chores, sometimes watched television, took naps during the day, occasionally saw friends, suffered from insomnia, and had to frequently urinate at night. AR 481. Regarding mental status, Dr. Owen observed that Plaintiff "understood simple questions and instructions. His speech was clear and coherent. However, he did take a long time to answer questions, and it appeared that his process was slower than most others." AR 481. Dr. Owen further observed that "[Plaintiff's] gait was normal. His affect was appropriate. There were no extreme mood swings. He was oriented to time, place and person. There were no delusions or hallucinations, loose associations or tangential thinking." AR 481.

Dr. Owen determined that Plaintiff's overall Intelligence Quotient ("IQ") score "fell in the borderline range of intellectual functioning. Dr. Owen opined that Plaintiff had "difficulty with attention, calculation and recall. He could not spell 'world' backwards. He had difficulty with working memory as well." AR 481. Dr. Owen concluded that Plaintiff had adjustment order with mixed anxiety and depressed mood, and mild neurocognitive disorder. AR 481. According to Dr. Owen, "[Plaintiff] has some cognitive deficits that include difficulty with recall, attention and calculation. . . . His executive functions such as planning and organizing are limited." AR 481. He also opined that Plaintiff had moderate to marked difficulties in: (1) understanding or remembering detailed or complex instructions; (2) attending and concentrating; and (3) interacting with the public. AR 481-82. Dr. Owen also opined that Plaintiff had moderate difficulties in: (1) carrying out instructions; (2) interacting with co-workers; (3) interacting with supervisors; (4) adapting to changes in the workplace; and (5) using public transportation. AR 481-82. Notably, Dr. Owen did not elaborate on the functional limitations he found, and did not explain why Plaintiff had these specific functional limitations.

*Susette Eaves, CNFP*

ALJ Lindsay accorded little weight to Ms. Eaves's opinion. AR 19. Ms. Eaves treated Plaintiff for two years before she wrote a letter about his application for SSI. AR 447. In her letter, dated July 12, 2012, Ms. Eaves wrote, "[T]here is no question that [Plaintiff] has a cognitive impairment. He processes information very slowly and often times after repeated explanations he still cannot comprehend the situation properly." AR 447. Ms. Eaves opined that Plaintiff's perceived difficulty processing information was "an enormous obstacle in treating his resistant hypertension." AR 447. Ms. Eaves reported that Plaintiff was on four medications for hypertension, and has renal insufficiency "probably secondary to his long standing uncontrolled hypertension," although in the previous sentence Ms. Eaves wrote that "his [hypertension] control is better[.]" AR 447. Ms. Eaves concluded that she would refer Plaintiff to "Renal" for an evaluation and also refer him for neuropsychological testing, which she was "certain" would "correlate with a cognitive impairment." AR 447.

*Plaintiff's testimony*

Plaintiff testified that he lived in Albuquerque with his sister. AR 78. Plaintiff used to have a driver's license, but at the time of the hearing took public transportation without any issues. AR 78. Plaintiff testified that he worked in construction and at a warehouse where he unloaded boxes filled with paper. AR 78, 80. After working at the warehouse for four months, one of Plaintiff's physicians instructed him not to lift anything over thirty pounds. AR 82. After that, Plaintiff went through boxes and re-filed the contents. AR 83. Plaintiff did that for almost two months when his supervisors "laid me off because I wasn't that fast at doing it, like other people could do like five to ten faster th[a]n, you know, my one or whatever." AR 83.

When ALJ Lindsay asked Plaintiff why he could not work, Plaintiff responded he had bad ankle problems that were worse for his left ankle, he did not have grip strength in his left hand, and that he took ten pills a day that cause side effects of dizziness, fatigue, and nausea. AR 84-85. Plaintiff stated that he took his medication every day. AR 98-99. Plaintiff testified that it was difficult for him to open bottles of water due to his lack of grip, the bumps on his hand, and arthritis. AR 94. Plaintiff explained that his lack of grip strength and the bumps on his hands had been occurring for three months, and that one of his doctors "just tested my grip strength" and said that while his right hand was normal, his left hand had no grip strength. AR 95.

Plaintiff testified that his kidneys were functioning at sixty percent of their normal function [AR 85], and that he experienced ankle swelling. AR 87. The swelling did not subside after Plaintiff stopped taking the water retention medication that a physician opined could have been the cause of the swelling. AR 89. Because of the onset of ankle swelling, Plaintiff stopped his normal exercise routine of walking for one mile around a track. AR 90-91.

Plaintiff also testified that he had insomnia and a bad memory that had gotten worse in the last few years. AR 92. Plaintiff had difficulty doing crossword puzzles at the time of the hearing. AR 92. Plaintiff also testified that he had some difficulty reading because he had to read text several times before he understood it. AR 78. Plaintiff's activities of daily living included doing dishes and sweeping the floor. AR 96. Plaintiff generally did not have difficulty showering, getting dressed, cooking, or going to the grocery store unless his ankles were hurting. AR 99. Plaintiff took two or three naps per week because of his fatigue. AR 96. Plaintiff testified that he can sit for two hours at a time for a job, but it would be difficult because his kidneys would start to hurt. AR 97. Plaintiff also testified that he can lift thirty pounds. AR 97.

*Vocational Expert Testimony*

ALJ Lindsay asked VE Pamela Bowman to assume a hypothetical person of Plaintiff's age, education, and past work experience; who can lift and carry twenty pounds occasionally and ten pounds frequently; who can push and pull to the extent that he can lift and carry; who can sit for six out of eight hours and can stand and walk for six out of eight hours; who would need to avoid unprotected heights and should never climb ladders, ropes, or scaffolds; who would be limited to understanding, remembering, and carrying out only simple instructions; who is able to maintain attention and concentration to perform only simple tasks for two hours at a time without requiring redirection to task; who requires work involving no more than occasional change in the routine work setting; has only occasional contact with the public; and has only incidental interaction with coworkers. AR 101-102.

Ms. Bowman identified three occupations that Plaintiff can perform given the limitations of that hypothetical: (1) Product Assembler, DOT # 706.684-022, which is a light job with a Specific Vocational Preparation ("SVP") of 2 for which there are 300,000 jobs in the national economy, which Ms. Bowman reduced to 150,000 jobs due to proximity to coworkers; (2) Hand Cleaner/Polisher, DOT # 709.687.010, which is a light job with a SVP of 2 for which there are 58,000 jobs in the national economy; and (3) Mail Clerk, DOT # 209.687-026, which is a light job with a SVP of 2 for which there are 200,000 jobs in the national economy, which Ms. Bowman reduced to 100,000 jobs due to proximity to others and because there could be a smaller post office at which Plaintiff would work. AR 102.

At step five, ALJ Lindsay concluded that Plaintiff was unable to perform any past relevant work [AR 20]. Using the Medical-Vocational Rules as a framework, she found that transferability of job skills was not material because Plaintiff is not disabled. AR 21. ALJ

Lindsay then "determined that the [VE's] testimony is consistent with the information contained in the [DOT]." AR 21. Based on the VE's testimony and the ALJ's determination of Plaintiff's RFC, ALJ Lindsay concluded that Plaintiff is not disabled. AR 21.

## V.    ANALYSIS

Plaintiff argues that the ALJ erred by adopting Dr. Burger's opinion, by granting little weight to Dr. Owen's opinion, and by granting little weight to Ms. Eaves's opinion. Pl.'s Mot. 12-18. These arguments fail because the ALJ's evaluation of the medical opinions is supported by substantial evidence. Plaintiff also failed to recognize Tenth Circuit precedent that allows an ALJ to account for certain moderate limitations by limiting the plaintiff to a specific type of work. Plaintiff also asserts that the ALJ's credibility determination was improper, but in so doing both misrepresents the unpublished Tenth Circuit case law he cites in support of his argument and disregards published Tenth Circuit case law that supports the ALJ's credibility determination. *See id.* at 19-20.

Lastly, Plaintiff's criticisms of the ALJ's step five findings are insufficient to trigger a remand. *See id.* at 22-24. Although the ALJ and the VE erred in concluding that Plaintiff's RFC would qualify him to be a Products Assembler, the Court rejects Plaintiff's claims concerning his eligibility for employment as a Mail Clerk or Hand Cleaner/Polisher. The ALJ's findings related to those two occupations are supported by substantial evidence.

### A.    The ALJ's Evaluation of the Medical Opinions Is Supported by Substantial Evidence

#### 1.    Dr. Burger

Plaintiff argues the ALJ's evaluation of Dr. Burger's opinion is not supported by substantial evidence. Pl.'s Mot. 13. Specifically, Plaintiff asserts that Dr. Burger relied on evidence that was not in the Administrative Record, and that ALJ Lindsay relied on Dr. Burger's

conclusion that Plaintiff's hypertension is essentially resolved, which is contradicted by other evidence in the record. Pl.'s Mot. 12. Plaintiff does not explain why the note from Presbyterian Heart Group that Dr. Burger mentioned is so crucial that its absence from the record meant that the ALJ should not have relied upon Dr. Burger's opinion.

ALJ Lindsay also did not rely on Dr. Burger's conclusion that Plaintiff's hypertension is essentially resolved. Plaintiff does not provide a citation to the ALJ's decision, but the Court's review of the ALJ's decision shows that, in discussing Plaintiff's hypertension, ALJ Lindsay relied almost entirely on records from the University of New Mexico Renal Clinic from 2013 to 2014 and Plaintiff's treatment notes from First Choice Community Healthcare from 2010 to 2014. AR 17-18. The ALJ's focus was on Plaintiff's admission that he had run out of his medications on almost every occasion on which he complained of dizziness or the record showed that his blood pressure was uncontrolled. AR 17-18. ALJ Lindsay did not refer to Dr. Burger's opinion that Plaintiff's hypertension was essentially resolved in her decision, but instead considered medical evidence of record concerning Plaintiff's blood pressure in determining Plaintiff's RFC. *See* AR 14-20. Plaintiff argues that the ALJ erred by not considering Dr. Burger's report in light of later-developed evidence, but the record shows that the ALJ repeatedly referred to medical evidence of record following Dr. Burger's 2010 evaluation, including evidence showing that Plaintiff's blood pressure was uncontrolled in October 2014. *See* AR 18.

Regarding the missing record, the Commissioner argues that the SSA was responsible for developing the record only for twelve months prior to Plaintiff's application, which was from December 2009 and later. *See* Def.'s Resp. 15, ECF No. 22. The two-page note from Presbyterian Heart Group to which Dr. Burger referred was from June 2, 2009, outside the

window of time for which the SSA was responsible in developing the record. *See* AR 385. Plaintiff did not respond to the SSA's twelve-month argument, instead replying only that the Commissioner admitted that the SSA had the missing record. Pl.'s Reply 2. Referring ironically to still more evidence not in the record, Plaintiff contends that the Presbyterian Heart Group note was important because congestive heart failure is a chronic disease that can only be managed and not cured. *See id.* The ALJ clearly understood that Plaintiff was diagnosed with congestive heart failure, in part because she found that his history of chronic heart failure was a severe impairment. AR 13. The Court is satisfied that ALJ Lindsay properly understood the nature and severity of Plaintiff's congestive heart failure and the limitations it caused him. Plaintiff is essentially asking the Court to re-weigh the evidence that Plaintiff was diagnosed with congestive heart failure and that he suffered from high blood pressure, and then to assign it more significance than did the ALJ. The Court declines that invitation. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Accordingly, the Court concludes that the ALJ's evaluation of Dr. Burger's opinion is supported by substantial evidence.

## 2. Dr. Owen

Plaintiff argues that "[t]he ALJ failed to discuss Dr. Owen's finding of a moderate to marked limitation in understanding and remembering detailed or complex instructions, the moderate impairment with carrying out instructions, and the moderate to marked impairment in the ability to attend and concentrate." Pl.'s Mot. 14. Plaintiff also contends that the ALJ's limitation of Plaintiff to simple work does not accommodate Dr. Owen's finding that Plaintiff was markedly limited in ability to attend and concentrate, and that the ALJ was required to address Dr. Owen's finding that Plaintiff was moderately limited in carrying out instructions. *Id.* at 15. Finally, Plaintiff asserts that the ALJ did not provide specific reasons "for failing to adopt

Dr. Owen's assessed limitations in the areas of understanding and remembering detailed or complex instructions, carrying out instructions, and attending and concentrating." *Id.* at 15-16.

ALJ Lindsay provided detailed reasoning that constitutes more than substantial evidence for why she accorded limited weight to Dr. Owen's opinion regarding Plaintiff's functional limitations. AR 19. The ALJ opined that some of Dr. Owen's limitations were "not fully supported by his clinical findings," and then cited specific examples. AR 19. The ALJ accurately pointed out that Dr. Owen's conclusion that Plaintiff had moderate to marked difficulty in interacting with the public was unsupported by his report and inconsistent with Plaintiff's testimony. AR 19. According to the ALJ, Plaintiff's sister reported that he had never been fired from a job for failing to get along with others, he handled stress well, and handled changes in routine well. AR 19, 321. Although Dr. Owen found that Plaintiff had moderate difficulty using public transportation, that observation was not supported by Dr. Owen's report. Furthermore, Plaintiff directly contradicted that conclusion when he testified that he regularly takes public transportation and does not have problems doing so. AR 79. Although the ALJ did not specifically address Dr. Owen's findings that Plaintiff had moderate to marked difficulty in understanding and remembering detailed or complex instructions and moderate difficulty in carrying out instructions, the ALJ clearly took into account this limitation because the RFC limited Plaintiff to understanding, remembering, and carrying out only simple instructions. AR 16.

The Court confesses surprise that neither party addressed the direct applicability of the Tenth Circuit's opinion in *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). *Smith* concluded that an ALJ "can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Id.* at 1269; *see also Vigil v. Colvin*, 805 F.3d 1199, 1203-04

(10th Cir. 2015) (concluding ALJ did not err by accounting for the plaintiff's "moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work."). In *Smith*, the Tenth Circuit reviewed an ALJ's RFC determination based on a non-examining physician's assessment of nine moderate non-exertional limitations. *Id.* at 1268. These nine limitations were: (1) maintaining concentration, persistence, and pace; (2) remaining attentive and keep concentration for extended periods; (3) working with others without getting distracted; (4) completing a normal workday and workweek without interruption for psychologically based systems; (5) performing at a consistent pace without excessive rest periods; (6) accepting instructions and respond appropriately to criticism by supervisors; (7) getting along with coworkers or peers without distracting them or engaging in behavioral extremes; (8) responding appropriately to changes in the workplace; and (9) setting realistic goals or engaging in independent planning. *Id.* In her RFC narrative, the non-examining physician omitted the majority of the nine limitations and recommended instead that the claimant "could (1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged." *Id.* The ALJ adopted the recommendation and found that the claimant "(1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. "Through these findings," the Tenth Circuit held, "the [ALJ] incorporated the functional limitations of [the claimant's] moderate nonexertional limitations." *Id.*

Here, the ALJ did not explicitly account for the following limitations: moderate to marked difficulty in understanding and remembering detailed or complex instructions, moderate difficulty in the ability to carry out instructions, and moderate to marked difficulty in the ability to attend and concentrate. *See* AR 481-82. Although *Smith* did not discuss ability to understand

or remember detailed or complex instructions, the ALJ accounted for this in the RFC by limiting Plaintiff to understanding, remembering, and carrying out only simple instructions and performing only simple tasks. *See* AR 16. *Smith* discussed moderate limitation in maintaining concentration, persistence, and pace, which the Court interprets to include carrying out instructions. *See* 821 F.3d at 1268. *Smith* also discussed moderate limitation in ability to attend and concentrate. *Id*. *Smith* instructs that it was permissible for ALJ Lindsay to limit Plaintiff to simple work to account for these limitations. *See id*. at 1269. Because *Smith* permits the ALJ to account for certain of Plaintiff's moderate limitations by restricting him to simple work, the ALJ did not err.

Additionally, the ALJ acknowledged, "Testing of intellectual functioning resulted in a Full Scale I.Q. score in the borderline range. Nevertheless, [Plaintiff] has held semi-skilled jobs in the past, so he has developed adaptive functioning. Based on the consultative psychological evaluation, I believe [Plaintiff] is able to perform work within the cognitive and social parameters set out in my [RFC] assessment . . . This [RFC] is also supported by his sister's statement, which indicates that [Plaintiff] is able to perform basic plumbing repairs, wood repair, lawn mowing, and caring for two children." AR 20. This explanation, combined with the ALJ's finding that Plaintiff was no more than moderately limited in any particular area based on his testimony and his sister's testimony [AR 19], constitutes adequate explanation of Plaintiff's RFC and shows that the ALJ took into account Plaintiff's limitations in understanding and remembering detailed or complex instructions, carrying out instructions, and attending and concentrating. *See* Pl.'s Mot. 15-16. The Court therefore affirms Plaintiff's RFC as supported by substantial evidence.

### 3. CNFP Eaves

Plaintiff argues that, by rejecting Ms. Eaves's opinion, ALJ Lindsay effectively rejected an examining medical source opinion. Pl.'s Mot. 16. The Commissioner responds by noting that the ALJ recognized that Ms. Eaves was not an acceptable medical source. Def.'s Resp. 18. According to Social Security Ruling ("SSR") 06-03p, nurse practitioners are "other sources", as opposed to "acceptable medical sources." SSR 06-03p, 2006 WL 2329939 at *1-2 (Aug. 9, 2006). Only evidence from acceptable medical sources establishes the existence of a medically determinable impairment. *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007). Additionally, only acceptable medical sources can provide medical opinions and can be considered treating sources. *Id.* at 1301; 20 C.F.R. 404.927(a) (2017)[6]. Plaintiff does not cite to any authority disputing that a nurse is not an acceptable medical source, nor does Plaintiff address the Commissioner's argument.

Plaintiff instead asserts that SSR 06-03p "required the ALJ to analyze [CNFP] Eaves'[s] opinion in accordance with the factors in 20 C.F.R. § 416.927(d)." Pl.'s Mot. 18. Plaintiff is incorrect. Although SSR 06-03p states that the factors set forth in 20 C.F.R. § 404.927(d) "*can* be applied to opinion evidence from 'other sources,'" and that "an opinion from a medical source who is not an 'acceptable medical source' *may* outweigh the opinion of an 'acceptable medical source,'" SSR 06-03p does not require an ALJ to analyze a non-acceptable medical source's opinion in accordance with the factors set forth by 20 C.F.R. § 404.927(d). 2006 WL 2329939 at *4-5.

Here, Ms. Eaves's opinion was not well-supported, was conclusory, and rendered an opinion on disability, which is a determination reserved for the Commissioner. *See* 20 C.F.R. §

---

[6] This regulation applies to claims filed before March 27, 2017.

416.927(d)(1) ("Opinions on some issues . . . are not medical opinions . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability. . . . We are responsible for making the determination or decision about whether you meet the statutory definition of disability."). Ms. Eaves's opinion was a one-page letter that did not cite or refer to any of her treatment notes. AR 447. Ms. Eaves opined that Plaintiff has a cognitive impairment, despite acknowledging that she had not yet referred Plaintiff for neuropsychological testing, because Plaintiff "processe[d] information very slowly," which "ha[d] been an enormous obstacle in treating his resistant hypertension." AR 447. Ms. Eaves did not explain how Plaintiff's hypertension or his cognitive impairment affects his ability to work, an omission the ALJ mentioned in her decision. AR 19.

Indeed, when Plaintiff was asked by the ALJ why he felt that he could not work, Plaintiff did not testify that his hypertension or cognitive impairment caused his disability, nor did he assert that his dizziness is because of the hypertension. *See* AR 84-85. Further, Plaintiff testified that he took several medications a day, so it does not appear that a cognitive impairment inhibited his ability to take his medication. Plaintiff admitted his hypertension was uncontrolled when he ran out of his medications. AR 18.

In rejecting Ms. Eaves's opinion, the ALJ stated that "[h]er treatment notes do not support her opinion regarding the severity of [Plaintiff's] impairments." AR 19. The ALJ explained that Plaintiff saw Ms. Eaves "primarily for refills of his blood pressure medications, and he generally had no specific complaints and a normal physical examination." AR 19. While the ALJ did not discuss Ms. Eaves's opinion that Plaintiff's perceived slowness in processing information obstructed her treatment of Plaintiff's hypertension, Ms. Eaves also did not explain

that opinion, and therefore the ALJ was not required to rely upon it.  The Court notes that,

although Dr. Owen opined that Plaintiff had "some cognitive deficits," his opinion was

consistent with Plaintiff's RFC and inconsistent with Ms. Eaves's opinion that Plaintiff could not

work.  *See* AR 16, 447, 481.  This further supports the ALJ's rejection of Ms. Eaves's opinion.

The Court therefore concludes that the ALJ did not err and affirms the ALJ's evaluation of Ms.

Eaves's opinion as supported by substantial evidence.

### B.     The ALJ Did Not Err in Finding Plaintiff Only Partially Credible

Plaintiff next takes issue with the ALJ's finding that Plaintiff was only partially credible.

Plaintiff alleges that the ALJ placed too much emphasis on Plaintiff's denial of pain at his

appointments at First Choice.  Pl.'s Mot. 19.  In doing so, Plaintiff claims that the ALJ

misunderstood that his complaints are not just based on pain, but rather also on dizziness and

cognitive dysfunction, because those ailments "limit his ability to function in the workplace."  *Id.*

Plaintiff's own testimony contradicts this argument.  Plaintiff testified that his ankle pain, lack of

grip strength in his left hand, and the side effects from his medication, including fatigue,

dizziness, and nausea, prohibited him from working.  AR 84-85.  Notably, Plaintiff did not refer

to any cognitive dysfunction in explaining why he felt he could not work.

In support of her conclusion that "[t]reatment notes do not document [Plaintiff's] alleged

symptoms of fatigue, nausea, kidney pain, or clinical findings of lower extremity swelling," the

ALJ thoroughly summarized medical records spanning several years.  AR 17-19.  The ALJ

extensively detailed the many appointments Plaintiff had in which he reported that he had run

out of his blood pressure medications.  AR 17.  The ALJ reported that Plaintiff complained of

dizziness, but then in March 2011, told Ms. Eaves "he was feeling better," and by September

2011, was walking for thirty minutes per day and denied dizzy spells.  AR 17.  In June 2012,

Plaintiff did not mention dizziness. AR 17. The ALJ observed that, in May 2013, Plaintiff reported that he "occasionally had dizziness ongoing for the past three years, *but this was mainly going from sitting to standing*." AR 17. One week later, Plaintiff complained that his dizziness had not changed with the adjustment of his medications, but by June 28, 2013, Plaintiff reported only occasional dizziness that was improving. AR 17. Regarding Plaintiff's ankles, the ALJ referred to medical records from 2010 to 2014 that showed no evidence of lower extremity edema. AR 18. With respect to Plaintiff's grip strength, Dr. Burger noted strong bilateral grip [AR 387], and Plaintiff testified that his problems with grip strength began only three months prior to the hearing. AR 95.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *White v. Berryhill*, 704 F. App'x 774, 778 (10th Cir. 2017) (unpublished) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)). Nonetheless, an ALJ's credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* Here, the ALJ's credibility findings were closely linked to substantial evidence, with specific citation to several years of medical records. Thus, Plaintiff's argument essentially amounts to a request to re-weigh this evidence, which the Court will not do.[7]

Plaintiff also argues that the ALJ wrongly discredited his reports of anxiety and depression "because he did not seek mental health treatment and was not prescribed antidepressant or antianxiety medications." Pl.'s Mot. 19. Plaintiff asserts that an ALJ may not rely on lack of treatment to discount a plaintiff's reports of symptoms, *id.* at 19, citing to *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished), and *Fleetwood v.*

---

[7] Plaintiff also asks the Court to re-weigh evidence concerning his activities of daily living with respect to the ALJ's adverse credibility finding, Pl.'s Mot. at 20, ECF No. 20, which the Court will similarly not do. In addition, Plaintiff asks the Court to re-weigh Ms. Trujillo-Bergey's statement, *id.*, which the Court also declines to do.

*Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (unpublished). Plaintiff distorts the holdings of *Grotendorst* and *Fleetwood* to such a great extent as to be misleading. *Grotendorst* and *Fleetwood* do not concern credibility determinations at all. Instead, as the Commissioner points out, these cases stand only for the proposition that "a claimant does not necessarily have to have sought treatment for a mental health impairment for it to be found severe at step two." Def.'s Resp. 13. In this case, at step two, the ALJ found that Plaintiff's adjustment disorder with mixed anxiety and depressed mood was a severe impairment. AR 13. Further, Plaintiff did not testify that his anxiety and depression affected his ability to work. *See* AR 84-85. Additionally, none of the medical opinions, including that of Ms. Eaves, stated that Plaintiff's anxiety and depression affected his ability to work. The Court therefore affirms the ALJ's credibility determination as supported by substantial evidence.

### C. The ALJ Properly Relied on the VE's Testimony

Finally, Plaintiff contends that, because the RFC is not supported by substantial evidence, the VE's testimony cannot constitute substantial evidence to support the ALJ's finding that Plaintiff is not disabled. Pl.'s Mot. 22. Because the Court concluded that the ALJ's RFC was supported by substantial evidence, this argument merits no further discussion.

Plaintiff next asserts that the Products Assembler occupation, which has a reasoning level two, is not consistent with Plaintiff's RFC. *Id.* at 22-23. The DOT defines reasoning level 2 as requiring the worker to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral *instructions* [and d]eal with problems involving a few concrete variables in or from standardized situations." *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th. Cir. 2005), *quoting* Dictionary of Occupational Titles, App. C, "Components of the Definition Trailer", https://occupationalinfo.org/appendxc_1.html, last accessed Feb. 22, 2018 (emphasis

added). In this case, the ALJ concluded in part that Plaintiff is limited to understanding, remembering, and carrying out only simple instructions, which is inconsistent with the requirements of a reasoning level 2 occupation, according to the DOT. AR 16.

When there is a conflict between the VE's testimony (in this case, that Plaintiff could perform the Products Assembler occupation with his RFC) and the information in the DOT, "the ALJ should have asked the expert how his testimony . . . corresponded with the Dictionary of Occupational Titles, and elicited a reasonable explanation for the discrepancy on this point, before he relied on the expert's opinion that claimant could perform these three jobs." *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999). The SSA confirmed the effect of *Haddock*'s holding in SSR 00-4p, which states:

> When a VE or [Vocational Specialist ("VS")] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. . . .When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.

2000 WL 1898704, at *4 (Dec. 4, 2000). The Court's review of the hearing transcript indicates that the ALJ never asked the VE about a possible conflict between her testimony and the DOT, despite noting in her decision that she had "determined that the [VE's] testimony is consistent with the information contained in the [DOT]." AR 21. Yet, there is an apparent conflict between the DOT and the VE's testimony because the ALJ included Plaintiff's limitation that he can carry out only *simple* instructions in the hypothetical she provided to the VE, but the DOT states that the Products Assembler occupation required the ability to carry out *detailed* instructions. ALJ Lindsay thus did not resolve the conflict before relying on the VE's testimony to find that Plaintiff is not disabled. This was error. The Court therefore concludes that the

ALJ's finding that Plaintiff could work as a Products Assembler is not supported by substantial evidence.

Similarly, Plaintiff argues that the Mail Clerk occupation has a reasoning level three, which is also not consistent with Plaintiff's RFC.[8]  Pl.'s Mot. 24.  Unfortunately, Plaintiff devotes only half of one sentence to this argument and does not further develop it.  The sum total of Plaintiff's argument regarding the Mail Clerk occupation in the Motion is as follows: "Postal jobs . . . have specifications in reasoning level and SVP far beyond Mr. Trujillo's ability."  *Id.*  The argument's lack of development alone is sufficient for the Court to decline to consider it.  *Adler v. Wal-Mart Stores Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived[.]").  However, in his Motion, Plaintiff does not refer at all to *Haddock*'s holding that the ALJ is required to ask the VE whether her testimony corresponds to the DOT, and if there is a discrepancy, to elicit a reasonable explanation.[9]  196 F.3d at 1084.  Plaintiff also does not cite to SSR 00-4p in his Motion or Reply.  Because Plaintiff's challenge on these grounds to the Mail Clerk occupation was raised for the first time in his Reply and is not in response to an argument advanced in the Commissioner's Response, the Court will not consider it.  *See In re Gold Resource Corp. Securities Litigation*, 776 F.3d 1103, 1119 (10th. Cir. 2015) ("While it is true that we generally do not 'review issues raised for the first time in a reply brief, we make an exception when the new issue argued in the reply brief is offered in response to an argument raised in the [appellee's] brief.'"), quoting *Beaudry v.*

---

[8] Plaintiff also argues that the Mail Clerk occupation no longer exists in the modern economy, quoting from a Dictionary of Occupational Titles ("DOT") listing that is incorrect, which Plaintiff acknowledged in his Reply.  Pl.'s Mot. 24; Pl.'s Reply 8, ECF No. 23.  However, even if Plaintiff had cited to the correct DOT listing, Plaintiff's argument still would have been unpersuasive.  As the Commissioner points out, Def.'s Resp. 21, ECF No. 22, the SSA's regulations and rulings state that the DOT is an acceptable source of reliable job information.  *See* 20 C.F.R. § 404.1566(d)(1) (2017); SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("In making disability determinations, we rely primarily on the DOT . . . for information about the requirements of work in the national economy.").

[9] Plaintiff cites to *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999), in his Motion, but only to support the related proposition that Plaintiff's hearing counsel did not have a duty "to cross-examine the vocational expert about the number of jobs or their requirements."  Pl.'s Mot. 24.

*Corr. Corp. of Am.*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003); *State Farm Fire & Cas. Co. v. Mhoon,* 31 F.3d 979, 984 n. 7 (10th Cir. 1994) (issue waived if not raised in opening brief); *Lyons v. Jefferson Bank & Trust,* 994 F.2d 716, 724 (10th Cir. 1993) (generally, issues raised for first time in reply brief will not be considered); Pl.'s Reply 8.

Plaintiff has raised no challenge to the ALJ's finding that he could work as a Hand Cleaner/Polisher. Consequently, the Court concludes that the ALJ's findings that Plaintiff could perform as a Hand Cleaner/Polisher or as a Mail Clerk are supported by substantial evidence, as is the ALJ's further finding that these jobs exist in sufficient numbers in the national economy.

## VI.    CONCLUSION

For the foregoing reasons, the Court holds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing, With Supporting Memorandum [ECF No. 20] is **DENIED.**

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **AFFIRMED** and that the instant cause is **DISMISSED.**

**IT IS SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*